IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                             No. CR 23-0346 JB

FAYE JANZAD,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Opposed Motion for a New Trial, filed May 1, 2025 (Doc. 126)("MNT"). The Court holds hearings on June 2, 2025, June 17, 2025, and September 23, 2025. See Clerk's Minutes at 1, filed June 2, 2025 (Doc. 146); Clerk's Minutes at 1, filed June 17, 2025 (Doc. 148); Clerk's Minutes at 1, filed September 23, 2025 (Doc. 158). The primary issues are: (i) whether Defendant Faye Janzad's trial counsel's failure to depose the victim, T.H., warrants a new trial; (ii) whether trial counsel's alleged refusal to prepare Janzad for her testimony warrants a new trial; (iii) whether trial counsel's alleged failure to conduct an adequate defense investigation warrants a new trial; (iv) whether trial counsel's alleged failure to communicate with the witnesses on Janzad's witness lists warrants a new trial; (v) whether trial counsel's failure to call corroborating witnesses or character witnesses warrants a new trial; (vi) whether trial counsel's alleged threat to stop working on the case unless Janzad paid additional attorney's fees warrants a new trial; and (vii) whether trial counsel allowing the United States to introduce evidence involving former VILA board member, Richard Padilla, warrants a new trial. The Court concludes that: (i) trial counsel's failure to depose the victim does not warrant a new trial, because the victim dies unexpectedly; (ii) trial counsel's alleged refusal to prepare Janzad for her testimony does not warrant a new trial, because counsel's decision not to over-craft Janzad's

testimony is a reasonable strategic choice and not Constitutionally deficient; (iii) trial counsel's alleged failure to conduct an adequate defense investigation does not warrant a new trial, because trial counsel's lack of investigation into Janzad's performance in other fiduciary accounts is a reasonable decision; (iv) trial counsel's alleged failure to communicate with the witnesses on Janzad's witness list does not warrant a new trial, because trial counsel did communicate with witnesses on the first witness list and the proposed testimony does not have a reasonable probability of producing a different result; (v) trial counsel's failure to call corroborating witnesses or character witnesses does not warrant a new trial, because it was a reasonable strategic decision and additional testimony does not have a reasonable probability of producing a different result; (vi) trial counsel's alleged threat to stop working on the case unless Janzad pays additional attorney's fees does not warrant a new trial, because it does not involve any failure to present evidence to the jury and does not undermine confidence in the verdict; (vii) trial counsel allegedly allowing the United States to introduce evidence involving former VILA board member, Richard Padilla, does not warrant a new trial, because Mr. trial counsel did object to the evidence and its exclusion does not have a reasonable probability of producing a different result. The Court therefore denies the MNT.

## FACTUAL BACKGROUND

To provide context, the Court takes its recitation of facts from the Indictment, filed March 21, 2023 (Doc. 1), the Presentence Investigation Report, filed January 30, 2025 (Doc. 110)("PSR"), the MNT, the United States' Response to Opposed Motion for New Trial (Doc. 134)("Response"), the Emergency Motion to Preserve the Testimony of Thomas Hubsham, filed July 19, 2023 (Doc. 17)("Emergency Motion"), the September 23, 2025, Hearing Transcript

(September 23, 2025, Tr.")[1], the August 5, 2024, Hearing Transcript, filed February 21, 2025 (Doc. 118)("August 5, 2024, Tr."), and the August 2, 2024, Hearing Transcript, filed February 21, 2025 (Doc. 117)(Janzad)("August 2, 2024, Tr."). The Court finds, based on a preponderance of evidence, certain facts in these documents as true. Rule 12(d) of the Federal Rules of Criminal Procedure requires that the Court state its essential findings on the record when deciding a motion which involves factual issues. See Fed. R. Crim. P. 12(d)("When factual issues are involved in deciding a motion, the court must state its essential findings on the record."). The findings of fact in this Memorandum Opinion and Order shall serve as the Court's essential findings for rule 12(d) purposes.

**1.      Relevant Conduct Regarding the Convicted Offense.**

1.      Faye Janzad owns and directs Veterans Independent Living of Albuquerque ("VILA"), a nonprofit organization that provides housing and services to veterans at various levels of care. See Indictment ¶ 1, at 1.

2.      T.H., now deceased, is a Vietnam veteran who receives disability income after he suffers from post-traumatic stress disorder, tinnitus, and hearing loss. See PSR ¶ 8, at 4.

3.      Because the VA deems T.H. one-hundred-percent disabled, the VA pays him approximately $4,000.00 per month in VA benefits. See PSR ¶ 8, at 4.

4.      In 2011, T.H. begins living at a VILA housing facility, where he lives until his death in 2023. See PSR ¶ 8, at 4.

5.      After T.H.'s former fiduciary dies, Janzad agrees to serve as T.H.'s fiduciary in 2017. See PSR ¶ 9, at 4.

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

6.      On January 8, 2018, Janzad signs a standard VA fiduciary agreement in which she agrees, among other things, to: (i) receive and manage T.H.'s money for his benefit; (ii) not borrow, loan, or gift T.H.'s funds; (iii) immediately report any change in income to the fiduciary activity; (iv) not commingle T.H.'s funds with another person's funds; and (v) strictly adhere to the fund-usage agreement, including obtaining prior written approval for any deviation. See PSR ¶ 9, at 4.

7.      In March 2018, Janzad commits the initial embezzlement -- which forms the factual basis of Counts 1 and 2 -- when she deposits $163,363.03 of T.H.'s funds into VILA's general operating account instead of into T.H.'s designated account. See PSR ¶ 11, at 4.

8.      In August 2018, the VA begins investigating Janzad after it discovers that the surety bond protecting T.H.'s funds is issued incorrectly. See PSR ¶ 12, at 4.

9.      During a series of onsite visits in October and November 2018, VA representatives request documentation explaining why Janzad has not deposited the $163,363.03 into the designated account, but Janzad does not provide any such documentation. See PSR ¶ 13, at 5.

10.     On November 7, 2018, Janzad sends the VA the following email:

> When VILA became his fiduciary, VILA received two checks adding up to $163,363.03 and please see the attached surety bond for 170,000.00 and the two deposits. This money went into the VILA account. As his power of attorney, at the time, VILA felt it was best to secure his money via a recorded mortgage at 5% interest with a monthly payment of $1,291.86. After conversing with you yesterday, I want to make sure that this is approved by your office so that we continue to provide stellar service that this Veteran has received.

11.     The November 7, 2018, email forms the factual basis of Count 3, because, when Janzad sends it, she knows that no recorded mortgage exists and therefore no mortgage payment exists. See PSR ¶ 14, at 5.

12.     On November 27, 2018, after the VA determines that Janzad misuses T.H.'s benefits, the VA appoints Guiding Star as T.H.'s new fiduciary, and directs Janzad to submit a final accounting and forward T.H.'s funds to Guiding Star; Janzad did neither. See PSR ¶ 13, at 5.

13.     Despite the VA's directive, Janzad works with a law firm to create and record a document entitled "Second Mortgage," which purports to be an agreement between VILA, as second mortgagor, and T.H., as mortgagee.  See PSR ¶ 16, at 5.

14.     Janzad submits a false VA fiduciary accounting statement -- that forms the factual basis of Count 4 -- that does not acknowledge the $163,363.03 which T.H. possesses when he enters Janzad's care and does not disclose that T.H. purportedly holds a mortgage interest in any property.  See PSR ¶ 19, at 6.

15.     The VA later receives a letter dated January 10, 2019, that T.H. purportedly signs, in which he protests the VA's decision to appoint a new fiduciary; a VILA secretary notarizes the letter and later states that Janzad asks her to notarize it even though she does not witness T.H. sign it.  See PSR ¶ 20, at 6.

16.     On January 10, 2019, Janzad creates a document entitled "Life Care Contract," which states that she deposits T.H.'s $163,363.03 into VILA's general operating account and asserts that she uses the funds in accordance with T.H.'s care needs.  See PSR ¶ 25, at 7.

17.     On January 10, 2019, Janzad also creates a document titled "Transcription from T.H. Understanding Recording, January 2019," which attempts to ratify the "Second Mortgage" transaction by asserting that she uses the funds to improve one of VILA's housing facilities.  See PSR ¶ 26, at 7-8.

18.     A financial analysis shows that, after Janzad deposits T.H.'s funds into VILA's general operating account, she spends the money as follows: (i) approximately $35,000.00 toward the first mortgage on the property she purportedly mortgages to T.H.; (ii) approximately $27,000.00 to unknown payees through cashier's checks; and (iii) the remaining funds on routine operating expenses, including staff compensation.  See PSR ¶ 30, at 9.

2.     **Janzad's trial counsel, Robert Gorence's, relevant conduct.**

19.     Mr. Gorence does not depose T.H. before T.H.'s unexpected death.  See MNT at 17; Response at 5.

20.     When Mr. Gorence learns that T.H. aspirates on the food that he is eating which ultimately leads to T.H.'s death, Mr. Gorence files Janzad's unopposed Emergency Motion.  See Emergency Motion at 1.

21.     Mr. Gorence reviews Janzad's testimony and exhibits with her prior to trial commencing.  See September 23, 2025, Tr. at 35:1-4 (Gorence).

22.     Mr. Gorence spends time preparing Janzad for cross-examination prior to trial commencing.  See September 23, 2025, Tr. at 37:18-20 (Gorence).

23.     Mr. Gorence determines that Janzad's strongest available defense is a mens rea defense focused on T.H. approving the expenditures at issue.  See August 5, 2024, Tr. at 1406:3-19 (Gorence).

24.     Mr. Gorence contacts at least some of the individuals whom the first witness list identifies when he goes to VILA's facilities and speaks with several employees.  See September 23, 2025, Tr. at 12:13-24 (Gorence).

25.     Mr. Gorence does not call corroborating witnesses or character witnesses on Janzad's behalf.  See MNT at 22.

26.     The United States had two witnesses prepared to testify in rebuttal if Mr. Gorence offered character evidence.  See Response at 8.

27.     Mr. Gorence objects to evidence relating to Richard Padilla as rule 404(b) evidence. See August 2, 2024, Tr. at 1272:1-15 (Gorence).

**PROCEDURAL BACKGROUND**

A Federal Grand Jury Indicts Janzad for two counts of the fiduciary misappropriation statute, in violation of 38 U.S.C. § 6101, and two counts of false statements made to government

investigators, in violation of 18 U.S.C. § 1001.  See Indictment at 1.  After the United States files a motion to exclude five categories of evidence, the Court holds a hearing on the motion, where it becomes clear that the contested evidentiary issues turn on the mens rea requirement in the § 6101 statute.  See Transcript of March 5, 2024, Hearing, at 11:14-18, filed February 21, 2025 (Doc. 119)("March 5, 2024, Tr."). The United States takes the position that the statute be construed as a strict liability offense.  See March 5, 2024, Tr. at 14:7-16 (Peña).  Janzad, through her counsel, Mr. Gorence, argues that § 6101 is not a strict liability offense.  See March 5, 2024, Tr. at 4:16-23 (Gorence).  This dispute between the parties ultimately leads to the Court filing its Memorandum Opinion and Order at 1, filed July 26, 2024 (Doc. 78)("Mens Rea MOO"), deciding, among other things, the appropriate mens rea requirement for § 6101.  The Mens Rea MOO rejected the United States' strict liability argument and instead holds that the United States "must prove that Janzad knowingly embezzled, knowingly misappropriated, or that Janzad -- knowing that the manner in which she did so was unauthorized by law -- used Hubshman's VA benefits."  Mens Rea MOO at 19.  There, the Court holds that "§ 6101 is not a strict liability offense, and that it is defined primarily by Janzad's knowledge of her conduct's prohibited character."  Mens Rea MOO at 19. As Mr. Gorence notes in his later testimony -- and the Court agrees -- this is an issue that was litigated extensively with the United States and ultimately Janzad prevails on the mens rea requirement. See September 23, 2025, Tr. at 19:1-14.  This ruling is also a win for Janzad, because it allows related statements from T.H. that informs Janzad's mental state to be introduced at trial. See September 23, 2025, Tr. at 9:1-14.

On August 5, 2024, a petit jury finds Janzad guilty of Counts I-IV.  See Sealed Jury Verdict, filed August 5, 2024 (Doc. 101).  On May 1, 2025, Janzad files her MNT.  In the MNT, Janzad argues that the Court should grant her a new trial, because she is denied her Sixth Amendment right to effective assistance of counsel.  See MNT at 1.  Janzad asserts several reasons why she

does not have effective assistance of counsel.  <u>See</u> MNT at 1.  First, Janzad argues that she is entitled to a new trial, because trial counsel fails to depose the victim, T.H., before his death.  <u>See</u> MNT at 1-2.  Second, she argues that she is entitled to a new trial, because trial counsel "refused to prepare Janzad effectively to testify in her own defense."  MNT at 1.  Third, Janzad argues she is entitled to a new trial, because trial "counsel was derelict in his duty when he conducted in inadequate defense investigation."  MNT at 1.  Fourth, Janzad asserts that she is entitled to a new trial, because trial counsel "failed to communicate with any of the people whom he disclosed as potential witnesses for the defense[.]"  MNT at 1.  Fifth, she argues that she is entitled to a new trial, because trial counsel "refused to present the testimony of numerous, available witnesses who could have corroborated Janzad's testimony, or express their opinion of Janzad's reputation for honesty and truthfulness, or impeached the 'other crimes' evidence offered by the prosecution." MNT at 1-2.  Sixth, Janzad argues that she is entitled to a new trial, because of trial counsel's

> repeated threats to stop working on the case, first when he insisted he be paid more money as the trial approached and then when he refused to work on the case at all the weekend before jury selection simply because Janzad was running late to a weekend appointment at his home.

MNT at 2.

On May 9, 2025, the United States files its Response.  In response to Janzad's claim that she is entitled to a new trial because trial counsel fails to depose T.H., the United States asserts that trial counsel is not ineffective when he fails to anticipate an "unexpected and sudden" event. Response at 5.  In response to Janzad's argument that she is entitled to a new trial, because trial counsel refuses to prepare her for her testimony, the United States argues that trial counsel not over-crafting Janzad's testimony is a strategic decision that does not raise a Constitutional deficiency.  <u>See</u> Response at 6.  Responding to Janzad's argument that trial counsel is ineffective by conducting an inadequate defense investigation, the United States responds that this is not

Constitutionally deficient, because Janzad does not point to a subject of inquiry that trial counsel should have further investigated.  See Response at 6.  In response to Janzad's assertion that trial counsel fails to communicate with the witnesses on the defense witness list, the United States responds that it does not constitute ineffective assistance of counsel, because Janzad "presents no evidence in support of the accusation."  Response at 7.  In response to Janzad's argument that trial counsel is ineffective for failing to call corroborating and character witnesses, the United States asserts that any corroborating testimony "would not have helped because she admitted the facts that made her guilty."  Response at 7.  In response to Janzad's assertion that trial counsel is ineffective, because he threatens to stop working on the case and demands additional attorneys fees,  the United States asserts that these actions do not constitute ineffective assistance of counsel, because the "conduct does not involve any failure to present facts to the jury and it does not undermine confidence in the verdict."  Response at 8.

On May 30, 2025, Janzad files Reply to the Response to a Motion for a New Trial (Doc. 138)("Reply").  The Reply first focuses on the fact that Janzad pays $120,000.00 to her trial counsel, but allegedly receives very little in return: "But in one respect, the United States is most assuredly wrong, never before has someone 'charged more for less.'  Janzad contends that, in truth, no lawyer practicing before this Honorable Court or in this beloved District has ever done less than Janzad's after charging so much."  Reply at 1.  Further, Janzad reasserts that witnesses should have been called to corroborate Janzad's testimony, "or to provide any context or sympathy for her testimony."  Reply at 2.  Finally, Janzad argues that she is entitled to a new trial, because, at the closing, "trial counsel seemingly conceded every element of the offenses charged in Counts One and Two."  Reply at 2.

### LAW REGARDING MOTIONS FOR A NEW TRIAL

Rule 33 of the Federal Rules of Criminal Procedure provides:

(a)     **Defendant's Motion.**  Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires.  If the case was tried without a jury, the court may take additional testimony and enter a new judgment.

(b)     **Time to File.**

    (1)     **Newly Discovered Evidence.**  Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty.  If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.

    (2)     **Other Grounds.**  Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.

Fed. R. Crim. P. 33 (bold in original).  Under rule 33, the district court has discretion to grant a new trial if the interests of justice require one.  See Fed. R. Crim. P. 33(a).  See also United States v. Quintanilla, 193 F.3d 1139, 1146 (10th Cir. 1999)("Quintanilla").  "A motion for a new trial is not regarded with favor and should only be granted with great caution."  Sinclair, 109 F.3d at 1531 (citing United States v. Chatman, 994 F.2d 1510, 1518 (10th Cir. 1997)).  "'[A] defendant may not invoke rule 33 when he or she has pled guilty.'"  United States v. Christy, 883 F. Supp. 2d 1040, 1047 (D.N.M. 2012)(Browning, J.)(quoting United States v. Lambert, 603 F.3d 808, 809 (10th Cir. 1979)).

"The Tenth Circuit has further stated that when 'deciding a motion for new trial, the [trial] court may weigh the evidence and consider the credibility of witnesses in determining whether the verdict is contrary to the weight of the evidence such that a miscarriage of justice may have occurred.'"  United States v. Thomas, No. CR 13-1874 MV, 2016 WL 9819560, at *8 (D.N.M. August 5, 2016)(Vázquez, J.)(quoting United States v. Evans, 42 F.3d 586, 593 (10th Cir. 1994)).  "'The power to grant a new trial on the ground that the verdict is against the weight of the evidence should be invoked only in exceptional cases in which the evidence preponderates heavily against

the verdict.'"  United States v. Guzman-Martinez, No. CR 03-2118 RB, 2004 WL 7338099, at *1 (D.N.M. March 10, 2004)(Brack, J.)(quoting United States v. Mounkes, 204 F.3d 1024, 1027 (10th Cir. 2000)).

The Court previously has addressed motions for new trials under rule 33 in various cases. See, e.g., United States v. Kearney, No. CR 19-2848 JB, 2023 WL 5176276, at *23-31 (D.N.M. Aug. 11, 2023)(denying a motion for a new trial where, despite the defendant's complaints, the Court properly instructs the jury, appropriately excuses an intimidated juror, and does not excuse a juror who had prior business dealings with one of the defendant's business associates); United States v. Folse, No. CR 15-2485 JB, 2018 WL 6047415, at *20-22 (D.N.M. Nov. 19, 2018)(Browning, J.)(denying a motion for a new trial and a request for additional discovery where the defendant does not produce evidence that, with additional discovery, he could show that the United States destroyed evidence and, despite having earlier had notice that alleged deficiencies might exist in the United States' evidence, he did not seek evidence of such information); United States v. Neha, No. CR 04-1677 JB, 2006 WL 4062889, at *2-4 (D.N.M. June 26, 2006)(Browning, J.)(denying a new trial motion where the defendant complains of the United States' brief references to his criminal history and of the United States' comment to the jury that the Court altered a co-conspirator's statement, and where the weight of the evidence supports the verdict).

Rule 33 permits a defendant to move for a new trial in the event of newly discovered evidence if the defendant presents that motion within three years of the verdict of guilt.  See Fed. R. Crim. P. 33(b)(1).  Ordinarily, a defendant seeking a new trial under rule 33(b)(1) must satisfy a five-part test for newly discovered evidence that the Tenth Circuit outlines in Sinclair. See 109 F.3d at 1531.  The defendant must show that:

(1) the evidence was discovered after trial; (2) the failure to learn of the evidence

was not caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

Sinclair, 109 F.3d at 1531 (quoting United States v. Stevens, 978 F.2d 565, 570 (10th Cir. 1992). See Quintanilla, 193 F.3d at 1147 (discussing Sinclair's rule 33 test). See also United States v. Velarde, No. CR 98-0391 JB, 2008 WL 5993210, at *31-44 (D.N.M. May 16, 2008)(Browning, J.)(permitting a new trial in a sexual assault case where, after the trial, the defendant uncovered evidence that the alleged victim had accused other individuals of sexual assault). "Under Sinclair, a court cannot grant a new trial on the discovery of new impeachment evidence." United States v. Rodella, No. CR 14-2783 JB, 2015 WL 711931, at *33 (D.N.M. February 2, 2015)(Browning, J.)(citing Sinclair, 109 F.3d at 1531).

## LAW REGARDING INEFFECTIVE ASSISTANCE OF COUNSEL

The Supreme Court has long recognized that "the right to counsel is the right to effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that [it] cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. at 686. A defendant can pursue an ineffective assistance of counsel claim by asserting that the process was not adversarial because of affirmative state interference or a conflict of interest, or by arguing that his or her attorney was so inadequate that he or she was effectively denied the benefit of full adversarial testing. See Osborn v. Shillinger, 861 F.2d 612, 626 (10th Cir.1988).

With respect to ineffective assistance arising from inadequate lawyering, Strickland v. Washington provides the applicable two-part test:

First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not

functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair [proceeding]. . . .

Strickland v. Washington, 466 U.S. at 687.  See United States v. Kennedy, 225 F.3d 1187, 1197 (10th Cir.2000).  The appropriate standard for attorney performance is that of reasonably effective assistance -- the defendant must demonstrate that counsel's representation, considering all the circumstances, fell below an objective standard of reasonableness based on prevailing professional norms.  See Strickland v. Washington, 466 U.S. at 687-88.  In evaluating an attorney's performance, the court must be highly deferential:

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

. . . .

[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.

Strickland v. Washington, 466 U.S. at 689-91.  See United States v. Kennedy, 225 F.3d at 1197 ("There is a strong presumption that counsel provided effective assistance, and a . . . defendant has the burden of proof to overcome that presumption.")(quoting United States v. Williams, 948 F. Supp. 956, 960 (D.Kan.1996)).

A defendant asserting ineffective assistance because of deficiency in attorney performance also must prove prejudice affirmatively. See Strickland v. Washington, 466 U.S. at 693; United States v. Kennedy, 225 F.3d at 1197. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, 466 U.S. at 694.

## ANALYSIS

The Court denies Janzad's MNT. First, Janzad's trial counsel, Robert Gorence, failing to depose the victim, T.H., does not warrant a new trial, because T.H. died unexpectedly. Second, Mr. Gorence allegedly failing to prepare Janzad for her testimony does not warrant a new trial, because Mr. Gorence's decision not to over-craft Janzad's testimony is a reasonable strategic choice and not Constitutionally deficient. Third, Mr. Gorence allegedly failing to conduct an adequate defense investigation does not warrant a new trial, because trial counsel's lack of investigation into Janzad's performance in other fiduciary accounts is a reasonable decision. Fourth, Mr. Gorence allegedly failing to communicate with the witnesses on Janzad's witness list does not warrant a new trial, because Mr. Gorence did communicate with witnesses on the first witness list and the proposed testimony does not have a reasonable probability of producing a different result. Fifth, Mr. Gorence choosing to not call corroborating witnesses or character witnesses does not warrant a new trial, because it was a reasonable strategic decision, and additional testimony does not have a reasonable probability of producing a different result. Sixth, Mr. Gorence's alleged threat to stop working on the case unless Janzad pays additional attorney's fees does not warrant a new trial, because it does not involve any failure to present evidence to the jury and does not undermine confidence in the verdict. Seventh, Mr. Gorence allegedly allowing the United States to introduce evidence involving former VILA board member, Richard Padilla,

- 14 -

does not warrant a new trial, because Mr. Gorence did object to the evidence and its exclusion does not have a reasonable probability of producing a different result.

## I.     THAT MR. GORENCE FAILS TO DEPOSE VICTIM, T.H., DOES NOT WARRANT A NEW TRIAL.

Janzad first argues that a new trial is warranted, because Mr. Gorence fails to depose T.H. prior to T.H.'s death. See MNT at 16. According to Janzad, "at the time the Grand Jury returned its Indictment, [T.H.] was still alive and could have provided a videotaped deposition regarding his expressed wishes that VILA use his lump sum payment to secure himself a permanent place with VILA[.]" MNT at 16. Janzad asserts that a pre-trial deposition "could have shown the jury the level of [T.H's] competence and could have allowed him to explain how, following his decision to commit his lumpsum payment to VILA in March 2018, he was able to heal from decades of dysfunction." MNT at 16. The United States responds that Mr. Gorence does not qualify as ineffective counsel for failing to depose a victim who dies unexpectedly. See Response at 5. The Court agrees with the United States that Mr. Gorence is not ineffective for failing to depose the victim before his unexpected passing.

A court tasked with deciding an ineffective assistance of counsel claim must determine whether the counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." United States v. Jones, 852 F.2d 1275, 1276 (10th Cir. 1988)("Jones")(citing Strickland, 466 U.S. at 688). The proper standard for assessing attorney performance is that of reasonably effective assistance under prevailing norms. See Jones, 852 F.2d at 1276. The Strickland Court cautions, however, that "judicial scrutiny of counsel's performance must be highly deferential, and that every effort be made to eliminate the distorting effects of hindsight." Jones, 852 F.2d at 1277 (citing Strickland, 466 U.S. at 689). First, a defendant must first overcome the "strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance." Jones, 852 F.2d at 1277. Second, the defendant "must show that counsel's performance prejudiced the defense." Jones, 852 F.2d at 1277. This standard requires the defendant to show that "counsel's errors were so serious as to deprive him of a fair trial; a trial whose result is reliable." Jones, 852 F.2d at 1277.

The Court first must determine whether Mr. Gorence's failure to depose T.H. before T.H.'s death is reasonable conduct. See Jones, 852 F.2d at 1277. The Court holds that Mr. Gorence's conduct is reasonable conduct. Janzad admits that T.H.'s death is "unexpected and sudden." MNT at 17. Mr. Gorence is not ineffective for failing to anticipate an unexpected and sudden death. Moreover, when Mr. Gorence learns that T.H. aspirates on food that he is eating, which ultimately leads to him being transported to the University of New Mexico Hospital, Mr. Gorence files Janzad's Unopposed Emergency Motion to Preserve the Testimony of Thomas Hubshman, filed July 19, 2023 (Doc. 17). This motion demonstrates that, once Mr. Gorence learns of T.H.'s sudden declining health, he takes steps to preserve T.H.'s testimony by asking the Court to conduct a deposition. Ultimately, T.H. dies before Mr. Gorence can conduct that deposition. Janzad therefore does not overcome the strong presumption that Mr. Gorence's conduct falls within the wide range of reasonable professional assistance. See Jones, 852 F.2d at 1277.

In addition to Janzad's inability to show that Mr. Gorence's conduct falls outside the range of reasonable professional assistance, Janzad also is unable to show that Mr. Gorence's performance prejudiced her. See Jones, 852 F.2d at 1277. Counsel's error, even if professionally unreasonable, "does not warrant setting aside the judgment of a criminal trial if the error had no effect on the judgment." Jones, 852 F.2d at 1277. Thus, a defendant must show that there is a reasonable probability that, but for the counsel's errors, the result of the proceeding would have been different. Jones, 852 F.2d at 1277. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Jones, 852 F.2d at 1277. Janzad does not meet her burden

- 16 -

of showing that the decision which the jury reaches had a reasonable probability of being different if Mr. Gorence had preserved T.H.'s testimony via deposition.

Janzad argues that, if Mr. Gorence deposes T.H. before T.H.'s death, the jury could have heard T.H. express his wishes that VILA use his lump sum payment to secure himself a permanent place with VILA until the end of his life while supporting his fellow veterans whom he felt he had failed in Vietnam.  See MNT at 16.  Further, Janzad contends that T.H.'s testimony could show the jury T.H.'s competence and could have allowed him to explain how, following his decision to commit his lump sum payment to VILA, he was able mentally to heal.  See NMT at 16.  Janzad, however, offers no explanation how T.H.'s testimony leads to a reasonable probability that the proceeding's result would have been different.  In fact, even if T.H.'s deposition was played for the jury, in a pretrial Memorandum Opinion and Order, filed July 26, 2024 (Doc 78)("Motion in Limine MOO"), the Court excludes "any evidence or argument that, because Janzad commingled in accordance with [T.H.'s] express wishes, her conduct therefore is not so bad or that the underlying regulatory violation is a mere technicality."  Motion in Limine MOO at 62.  Instead, T.H.'s expressed wishes are admissible to the extent that the evidence is related to Janzad's state of mind at the time.  See Motion in Limine MOO at 65.  At trial, Janzad testifies to T.H.'s expressed wishes as they are relevant to her state of mind during the crime.  See Response at 5; August 2, 2024, Tr. at 1237:10-12.  Janzad therefore presents at trial the relevant evidence regarding T.H.'s wishes and having T.H.'s cumulative deposition testimony would not lead to a reasonable probability that the trial's result would be different.  The Court therefore denies the MNT insofar as it relies on Mr. Gorence failing to depose T.H. before his unexpected death.

## II.     THAT MR. GORENCE ALLEGEDLY FAILS TO PREPARE JANZAD FOR HER DIRECT EXAMINATION DOES NOT WARRANT A NEW TRIAL.

Janzad next argues that Mr. Gorence makes only a cursory effort to prepare her for her

direct testimony.  See MNT at 20.  According to Janzad, Mr. Gorence never provides Janzad with the questions he proposes to ask her on direct examination and never prepares her to confront cross-examination.  See MNT at 20.  Janzad, who claims that she is a deeply spiritual individual whom is often misunderstood, argues that she is "profoundly unprepared to testify in her own defense."  MNT at 20.  The United States responds that Mr. Gorence's preparation with Janzad does not warrant a new trial, because Mr. Gorence avoids over-crafting Janzad's testimony, reasoning that an over-prepared witness appears less credible to a jury.  See Response at 6.  The Court agrees with the United States that Mr. Gorence's decision not to over-craft Janzad's testimony is a reasonable strategic choice and not Constitutionally deficient.

Turning first to whether Mr. Gorence's direct examination preparation with Janzad is reasonable conduct.  See Jones, 852 F.2d at 1277.  The Court holds that Mr. Gorence's conduct is reasonable, because he makes informed strategic decisions while prepping Janzad for her testimony.  For starters, Mr. Gorence states that he extensively reviews Janzad's testimony and exhibits with her.  See September 23, 2025, Tr. at 35:1-4 (Gorence).  Mr. Gorence also testifies that he spends significant time preparing Janzad for cross-examination.  See September 23, 2025, Tr. at 37:18-20 (Gorence).  Mr. Gorence admits that, during preparation, he did not over craft Janzad's testimony by doing things such as telling her to look at the jury, but in his professional opinion, he does not give that advice to clients because it looks unnatural to the jury.  See September 23, 2025, Tr. at 39:11-19 (Gorence).  These sorts of professional decisions do not qualify as ineffective assistance of counsel, because informed strategic decisions by trial counsel are not considered Constitutionally unreasonable.  Strickland, 466 U.S. at 691.  Janzad's statements that Mr. Gorence does not adequately prepare her, without more, does not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 669.  Thus, Mr. Gorence's preparation of Janzad's

testimony qualifies as reasonable conduct.

In addition to Janzad's inability to show that Mr. Gorence's conduct falls outside the range of reasonable professional assistance, Janzad is also unable to show that Mr. Gorence's performance prejudices her. See Jones, 852 F.2d at 1277. To the extent that Janzad's direct testimony is unusual, that oddity is because Janzad's personality and worldview are unusual. Different trial counsel would not have made a difference. Viewing an exchange between Mr. Gorence and Janzad at trial makes the Court's point:

Gorence: Okay. And my point is given that -- given what you were directed to do, is there anything false on that November 7 email?

Janzad: This was already in work. I mean, if it was -- you know, this is how God gives you a message, you're on the wrong path. The number of mistakes was astronomical. You hand a document to a paralegal, and you say: Here is a sample mortgage I want you to follow. My handwriting is there. Change it to 163, da, da, da, da. She puts it on Don Felipe. So you guys charge $500 to do these note and mortgages, but you don't do a title search? This is a first grader. You would have found out that VILA doesn't even own Don Felipe. VILA was the owner of 1709 Georgia Street. And I thought, whoever sees this in the future, they're going to say: what a crazy gal. She already gave a life care for 163; she already moved nine veterans that they only have 14, 1500, so she already saved the government another 163, and she even put the second mortgage on top of it. It would have been irrelevant, because the interest would have gone through another veteran.

Gorence: I know.

Janzad: They're all together. These are all together. I want just trying to be on the over the top, you know. And it's like, when all of these things comes at you, you just sit back and say: God, what is the message? Who would ever charge -- and we've already paid that money -- so I thought, well, go ahead, finish. And then you put the wrong property, and you just say: How is it it's the wrong property? How do you do a note and mortgage without title binders?

> Gorence:    Now you're rambling.
>
> Janzad:    Sorry, sorry.

August 2, 2024, Tr. at 1131:16-1133:2 (Gorence, Janzad).  Janzad's unwillingness to answer simple questions extends to the Court's questioning at the December 12, 2025, hearing:

> Court:    But if you knew he wasn't your attorney and wasn't the right person to be your attorney, why did you allow him to work for half a year?
>
> Janzad:    Well, because I have sir many homeless Veterans that they come directly from the VA Hospital.  Surgery[wise] talking about six or seven of them that they haven't been able to pay [any].
>
> Court:    Okay, but.
>
> Janzad:    [I am] very busy.
>
> Court:    Focus on the Court's questions. . . .

Hearing Tr. at 17:2-12 (Court, Janzad)("December 12, 2025, Tr.").[2]  Based on Janzad's consistent commitment to not answering questions, the Court cannot say that, if Mr. Gorence prepares her even more for her direct and cross-examination testimony, there would be a reasonable probability that the result of the trial would have been different.  See Jones, 852 F.2d at 1277.  The Court therefore denies the MNT insofar as it relies on Janzad's argument that Mr. Gorence does not adequately prepare her for her testimony.

When the Court saw Janzad's argument that Mr. Gorence did not prepare her at all for her trial testimony, the Court thought that Mr. Gorence might testify that it would not do any good to work with Janzad, because you cannot control her.  Mr. Gorence surprised the Court, however, by not saying anything disparaging about Janzad.  Indeed, he thought her direct examination is good.

---

[2] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

See September 23, 2025, Tr. at 37:16-17 (Gorence).  Mr. Gorence observed that the United States did a great job on cross-examination.  See September 23, 2025, Tr. at 37:18-20 (Gorence).  Thus, while a different lawyer can spend time preparing for direct, cross is often just as horrendous for any defendant, regardless how well prepared.  Even if Mr. Gorence wishes to be generous to Janzad, the Court was at the trial and heard her testify itself.  Mr. Gorence, a very seasoned trial lawyer, could not control her.  The Court doubts that anyone could control her, and the United States did as good of job controlling her on cross, as could be expected.  The Court will go to its grave remembering vividly Janzad's testimony.  Particularly on direct, because she could not be controlled by a very experienced counsel.  The Court doubts that further preparation of her testimony would have been helpful, as she was bound to tell her story.

The one thought that the Court has is whether Janzad should have testified at all.  Mr. Gorence states that having Janzad testify is a very important part of her defense, because her mens rea defense centered on the fact that she did not use T.H.'s money personally; in his opinion, that could not have come out unless she testified.  See September 23, 2025, Tr. at 35:21-25 (Gorence).  In any case, even if Mr. Gorence suggested that she not testify because she is such a bad witness, the Court states with some confidence that Janzad insists on testifying, because she wants to tell her story in her own words.  The Court doubts that anything or anyone would keep Janzad from telling her story in her own words and in her own colorful style.

The one good thing about Janzad's method of testifying is that she got to tell her story as she wanted to tell it.  She cannot say that Mr. Gorence did not let her tell her story.  Janzad was not to be denied, regardless of what her attorney, the Court, or anyone else thought.  Janzad's attempt to throw Mr. Gorence under the bus now for her testimony is not convincing.

III.   **THAT MR. GORENCE ALLEGEDLY FAILS TO CONDUCT AN ADEQUATE DEFENSE INVESTIGATION INTO JANZAD'S PAST FIDUCIARY PERFORMANCE DOES NOT WARRANT A NEW TRIAL.**

Janzad contends that, after she retains Mr. Gorence as counsel, Mr. Gorence fails to pursue an adequate investigation to demonstrate that Janzad is not guilty. See MNT at 17. Specifically, Janzad argues that Mr. Gorence fails to investigate Janzad's performance within the six other fiduciary accounts which VILA manages in which Janzad serves as fiduciary. See MNT at 17. According to Janzad, evidence that she performs appropriately in those other accounts undercuts the United States' theory that her conduct here reflects systemic or calculated misconduct. See MNT at 17. She reasons that, if she possesses fraudulent intent, "her evil motive would have certainly manifested in the other cases where she acted as fiduciary -- not just one." MNT at 17. The United States counters that Janzad does not "point to even a subject area of inquiry that trial counsel could or should have investigated." MNT at 17. Although the Court disagrees with the United States to the extent Janzad has identified a discrete category of potential investigation -- her handling of other fiduciary accounts -- a new trial is nevertheless unwarranted. Under the governing standard, Mr. Gorence's decision not to pursue that line of inquiry is reasonable and, indeed, wise.

Under Strickland, counsel has a duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. The question is not whether another lawyer might have investigated further; it is whether Mr. Gorence's strategic judgment falls within the wide range of professionally competent assistance.

Here, the record reflects a coherent and rational strategic choice. Mr. Gorence concludes that Janzad does not effectively dispute that she violates the fiduciary agreement's technical terms.

See September 23, 2025, Tr. at 19:1-14 (Gorence). He is correct in his assessment. The only viable defense, in his view, is mens rea -- whether she acts with the intent that 38 U.S.C. § 6101 requires. See September 23, 2025, Tr. at 19:1-14 (Gorence).[3] After consulting with multiple VILA employees, including accounting personnel, Mr. Gorence determines that the strongest available theory is that T.H. requests or approves the expenditures at issue. See August 5, 2024, Tr. at 1406:3-19 (Gorence). In other words, the defense centers on Janzad's state of mind in this specific fiduciary relationship and not on her performance in unrelated accounts.

That decision is neither irrational nor professionally deficient. Evidence about six separate fiduciary relationships requires additional witnesses, documentary evidence, and trial time -- all to prove that Janzad did not misuse funds in those instances. The Court already indicated that it would not allow the T.H. evidence to show that she did not defraud T.H., but only to show her state of mind. The Court would not have allowed to prove that she did not defraud others to prove that she did not defraud T.H. See Fed. R. Civ. P. 404(b). Proof that Janzad complies with the law in other contexts does not logically negate that she acts with criminal intent here. The inference Janzad proposes -- that the absence of misconduct elsewhere disproves intent in this case -- is weak and speculative. Indeed, Janzad's theory rests on a flawed syllogism: because she does not commit similar violations in other fiduciary accounts, she therefore does not have act with fraudulent intent in this one. A defendant charged with embezzlement cannot defend by showing she handled other accounts properly. A defendant charged with murder cannot claim innocence because he did not

---

[3] As the Court explains in the Procedural Background, preserving the availability of a mens rea defense was a significant strategic victory for Janzad. Mr. Gorence testified -- and the Court agrees -- that this issue was heavily litigated by both parties and that he ultimately secured a favorable ruling permitting the jury to consider whether Janzad acted with the requisite criminal intent. See September 23, 2025, Tr. at 19:1-14. That ruling was critical. Had the Court rejected Janzad's mens rea argument, the offense would effectively have been treated as a strict-liability crime, leaving her with little to no viable defense. Securing the availability of a mens rea defense was therefore a crucial victory that Mr. Gorence obtained for Janzad.

kill others with whom he associated.  The absence of other crimes does not negate the mens rea for the charged offense.

Given this limited probative value, Mr. Gorence reasonably focuses the defense on the strongest available argument -- that T.H.'s wishes shaped Janzad's understanding of her authority and negated fraudulent intent.  Strategic choices about which themes to emphasize and which collateral avenues to forgo are judgments to which courts owe deference under Strickland. Applying that "heavy measure of deference," Strickland, 466 U.S. at 691, the Court concludes that Mr. Gorence's decision not to investigate Janzad's conduct in other fiduciary accounts falls within the range of reasonable professional assistance.

Janzad likewise is unable to show that Mr. Gorence's performance prejudiced her for the same reason that Mr. Gorence's lack of investigation is reasonable.  See Jones, 852 F.2d at 1277. Janzad's contention that that the absence of misconduct elsewhere disproves intent in this case is weak and speculative.  The burden is on Janzad to show that counsel's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Strickland, 466 U.S. at 687. Janzad must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  Thus, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilty." Strickland, 466 U.S. at 695.  "The likelihood of a different result must be substantial, not just conceivable." Newmiller v. Raemisch, 877 F.3d 1178, 1197 (10th Cir. 2017).  The Court cannot say that the further investigation of weak and speculative evidence has a substantial likelihood of producing a different result at trial.  See Newmiller v. Raemisch, 877 F.3d at 1197.  The Court therefore concludes that Mr. Gorence's investigations do not prejudice Janzad and Mr. Gorence's behavior is reasonable.  Accordingly,

the Court denies the MNT insofar as it relies on Mr. Gorence allegedly failing to conduct an adequate defense investigation into Janzad's past fiduciary performance.

IV.    **THAT MR. GORENCE ALLEGEDLY FAILS TO COMMUNICATE WITH THE WITNESSES ON JANZAD'S WITNESS LIST DOES NOT WARRANT A NEW TRIAL.**

Janzad alleges that the most "egregious example" of Mr. Gorence's deficient investigation is his purported "complete failure to interview a single witness" on his first witness List.  MNT at 17.  According to Janzad, Mr. Gorence never "attempted to contact a single potential defense witness or learn the substance of their testimony."  MNT at 17.  Janzad contends that this alleged inaction led to Mr. Gorence proceeding to trial "without having made any independent efforts to determine whether witnesses and evidence were available to rebut the Government's case or to corroborate Janzad's version of events."  MNT at 17.  The United States responds that the mere fact that Mr. Gorence does not interview certain witnesses, without more, does not amount to Constitutionally deficient performance.  See Response at 7.  The Court agrees with the United States that Janzad's allegation that Mr. Gorence does not interview witnesses, without more, does not amount to ineffective assistance of counsel.

Under Strickland, counsel has a duty "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  466 U.S. at 691.  "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  Strickland, 466 U.S. at 691.  The question is not whether another lawyer might have investigated; it is whether Mr. Gorence's strategic judgment falls within the wide range of professionally competent assistance.

Here, Janzad asserts that Mr. Gorence fails to interview the individuals listed on his first witness list, which contains nineteen names.  See MNT at 17.  The evidentiary record does not

support, however, this sweeping claim. Janzad provides affidavits from only two of the nineteen listed witnesses, and only one of those affiants states that Mr. Gorence does not speak with him. See Notice of the Submission of Statements in Support of Defendant's Opposed Motion for a New Trial at 3-6, filed May 4, 2025 (Doc. 131)("Witness Affidavits"). She submits no sworn statements from the remaining seventeen individuals indicating that Mr. Gorence never contacts them. This limited showing is insufficient to overcome Mr. Gorence's testimony that he went to VILA's facilities and spoke with several individuals there, and that he is "narrowly confident" some of those individuals were on the first witness list. September 23, 2025, Tr. at 13:13-24 (Gorence). In light of the absence of contrary evidence from the vast majority of listed witnesses, the Court credits Mr. Gorence's testimony and finds that he contacts at least some of the individuals whom the first witness list identifies.

Even assuming that Mr. Gorence does not interview every person on the first witness list, Janzad does not demonstrate that such a decision is unreasonable. Identifying a category of uncontacted witnesses, standing alone, does not establish deficient performance. The Supreme Court holds that "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of defense to counsel's judgments." Strickland, 466 U.S. at 691. Janzad offers no argument why interviewing these specific individuals is important to the defense strategy, nor does she explain how their anticipated testimony would alter Mr. Gorence's strategic calculus. Without such a showing, the Court must defer to counsel's professional judgment.

Moreover, Janzad cannot establish prejudice. To satisfy Strickland's second prong, she must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Newmiller v. Raemisch, 877 F.3d at 1197. Although Janzad submits two affidavits from potential witnesses in support of her motion, she does not explain how

the testimony in those affidavits meaningfully rebut the United States' evidence or alter the jury's evaluation of her intent. The Court has independently reviewed the affidavits and does not discern any reasonable probability that their contents would change the trial's outcome.  The statements do not undermine the central proof that the United States offers, contradict the core factual narrative that the United States presents at trial, or materially strengthen Janzad's mens rea defense. At most, they provide marginal or cumulative information that does not call the verdict's reliability into question.

The record instead reflects that Mr. Gorence advances a coherent defense theory focused on the strongest available argument -- that T.H.'s wishes shape Janzad's understanding of her authority and negate fraudulent intent.  Given the substantial deference owed to Mr. Gorence's investigative judgments and the absence of any concrete showing that additional interviews would alter the result, the Court concludes that Mr. Gorence's performance Constitutionally is adequate and that Janzad suffers no prejudice.  Accordingly, the Court denies the MNT insofar as it rests on the allegation that Mr. Gorence fails to conduct an adequate investigation into the witnesses on his first witness list.

**V.      THAT MR. GORENCE CHOOSES NOT TO CALL CORROBORATING WITNESSES OR CHARACTER WITNESSES DOES NOT WARRANT A NEW TRIAL.**

Janzad argues that she is entitled to a new trial, because Mr. Gorence does not present the testimony of "available defense witnesses who would have testified that they knew Ms. Janzad because of the work she did with VILA, and that in working with Ms. Janzad they had formed an opinion that she was an honest person and that they were aware of her reputation in the community for honesty and truthfulness."  MNT at 22.  The United States responds that Janzad fails to meet her burden of establishing ineffective assistance, because she does not identify which corroborating or character witnesses should testify or explain how their testimony would alter the

outcome.  See Response at 7.  The United States further argues that declining to call such witnesses strategically is sound, particularly because the United States has rebuttal witnesses prepared to respond if Janzad offers character testimony.  The Court agrees with the United States that Mr. Gorence is wise not to call these witnesses and not ineffective.

A court tasked with deciding an ineffective assistance of counsel claim must determine whether the counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Jones, 852 F.2d at 1276 (citing Strickland, 466 U.S. at 688).  The proper standard for assessing attorney performance is that of reasonably effective assistance under prevailing norms.  See Jones, 852 F.2d at 1276.  The Strickland Court cautions, however, that "judicial scrutiny of counsel's performance must be highly deferential, and that every effort be made to eliminate the distorting effects of hindsight."  Jones, 852 F.2d at 1277 (citing Strickland, 466 U.S. at 689).  First, a defendant first must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Jones, 852 F.2d at 1277.  Second, the defendant "must show that counsel's performance prejudiced the defense."  Jones, 852 F.2d at 1277.  This standard requires the defendant to show that "counsel's errors were so serious as to deprive him of a fair trial; a trial whose result is reliable."  Jones, 852 F.2d at 1277.

First, as to reasonableness, Mr. Gorence's decision not to call corroborating or character witnesses is not only permissible; in this case his decision is strategically sound.  Janzad does not identify any specific factual disputes requiring corroboration.  The parties do not contest the core conduct: Janzad commingles T.H.'s funds, uses them for purposes beyond his care, and makes inaccurate statements concerning those funds.  See Response at 7.  Her defense is not factual innocence, but mens rea -- that she lacks the requisite criminal intent.  See August 5, 2024, Tr. at 1406:3-19 (Gorence).  Corroborating witnesses therefore have limited utility.  To the extent they

would have confirmed that Janzad engages in good works or is dedicated to veterans, that evidence does not negate the offenses' elements. Janzad identifies no witness who could have testified directly to her subjective mental state at the time of the charged conduct. Calling witnesses merely to restate uncontested facts or to echo Janzad's own testimony adds little and risks diluting the focused mens rea that Mr. Gorence presents.

The same reasoning applies to character witnesses. Janzad does not specify what any proposed character witness would say beyond generalized statements regarding honesty or reputation. Moreover, Janzad testifies extensively regarding her work with veterans, thereby placing her character before the jury in her own words. Introducing additional character witnesses opens the door to rebuttal evidence. The United States represents that it has two witnesses prepared to testify in rebuttal if Janzad offers character evidence. See Response at 8. In light of the inconsistencies that the United States highlights in Janzad's testimony, Mr. Gorence reasonably concludes that inviting rebuttal character evidence poses substantial risk with minimal strategic upside. Viewed in totality, the decision not to call corroborating or character witnesses falls within the "wide range of reasonable professional assistance." Jones, 852 F.2d at 1277.

There is a good reason why very few criminal cases have reputation or opinion/character witnesses. While the defendant's character witness can only give a good opinion, the United States can ask about specific incidents that do not reflect positively on the defendant. The cross-examination is often much worse than any benefit of any opinion introduced.

Second, Janzad cannot demonstrate prejudice. She does not identify any specific factual issue that, if corroborated, likely would change the jury's verdict. Instead, she offers two affidavits -- one from Marshall Estner and one from Louis Aliperta Jr. See Witness Affidavit at 3-6. Janzad does not provide any explanation how either affidavit would alter the result. The Court reviews both affidavits carefully. The Estner affidavit emphasizes that Janzad does not enrich herself

personally, but instead uses funds for VILA's operating expenses.  See Witness Affidavits at 3.

That assertion does not undermine the United States' theory; using fiduciary funds for

unauthorized purposes remains a violation of the fiduciary agreement regardless of personal

enrichment.  The Aliperta affidavit focuses largely on Janzad's dedication and good works at

VILA.  See Witness Affidavits at 4.  Based on the information in the affidavit, Aliperta could have

testified to Janzad's character by reputation or opinion only.  See United States v. Talamante, 981

F.2d 1153, 1156 (10th Cir. 1992)("When character evidence is used circumstantially to create an

inference that a person acted in conformity with his or her character, Rule 405 allows proof of

character only by reputation and opinion.").  That testimony invites rebuttal and does not negate

the charged offense's elements.

Neither affidavit meaningfully weakens the United States' proof nor materially strengthens

the mens rea defense.  Given the substantial deference the Court owes to Mr. Gorence's strategic

judgments and the absence of a reasonable probability that these witnesses would alter the

outcome, the Court concludes that Mr. Gorence's performance is constitutionally adequate and

that Janzad does not demonstrate prejudice.  Jones, 852 F.2d at 1277.  Accordingly, the Court

denies the MNT insofar as it rests on Mr. Gorence's decision not to call corroborating or character

witnesses.

**VI.     THAT MR. GORENCE'S ALLEGEDLY THREATENS TO STOP WORKING ON THE CASE UNLESS JANZAD PAYS ADDITIONAL ATTORNEY'S FEES DOES NOT WARRANT A NEW TRIAL.**

Janzad next alleges that Mr. Gorence renders ineffective assistance by threatening to stop

working on her case unless she pays additional attorney's fees.  See MNT at 18-19.  She contends

that Mr. Gorence uses the need to prepare for trial as leverage to demand higher compensation.

See MNT at 18.  The United States responds that, even if this conduct occurs, it does not amount

to ineffective assistance of counsel, because it does not affect the presentation of evidence, the

theory of defense, or the reliability of the verdict.  See Response at 8.  The Court agrees with the United States that this conduct does not amount to ineffective assistance of counsel, because it does not undermine confidence in the verdict.

A court tasked with deciding an ineffective assistance of counsel claim must determine whether the counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Jones, 852 F.2d at 1276 (citing Strickland, 466 U.S. at 688).  The proper standard for assessing attorney performance is that of reasonably effective assistance under prevailing norms.  See Jones, 852 F.2d at 1276.  The Strickland Court cautions, however, that "judicial scrutiny of counsel's performance must be highly deferential, and that every effort be made to eliminate the distorting effects of hindsight." Jones, 852 F.2d at 1277 (citing Strickland, 466 U.S. at 689).  First, a defendant first must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Jones, 852 F.2d at 1277.  Second, the defendant "must show that counsel's performance prejudiced the defense." Jones, 852 F.2d at 1277.  This standard requires the defendant to show that "counsel's errors were so serious as to deprive him of a fair trial; a trial whose result is reliable." Jones, 852 F.2d at 1277.

Even accepting Janzad's allegations as true for purposes of this motion, she has not demonstrated that Mr. Gorence's fee-related communications fall outside the "wide range of reasonable professional assistance." Jones, 852 F.2d at 1277.  Janzad asserts that, after she paid the additional fees, Mr. Gorence took only "minimal action" to prepare for trial.  MNT at 19.  That allegation, however, is wholly conclusory.  She does not identify any specific strategic decision that is compromised, any investigative lead that Mr. Gorence abandoned, any witness whom Mr. Gorence should have interviewed but does not, any exhibit that Mr. Gorence should offer for introduction but Mr. Gorence omits, or any argument that Mr. Gorence does not make because of

the fee dispute.  Nor does she contend that Mr. Gorence seeks to withdraw, ceases preparation altogether, or otherwise fails to perform trial counsel's core functions.  Absent concrete examples tying the alleged fee dispute to identifiable deficiencies in performance, the Court cannot conclude that the conduct falls outside the bounds of Constitutionally reasonable representation.

The Sixth Amendment guarantees effective representation at trial and not harmonious fee negotiations.   Disputes over billing practices, even contentious ones, do not constitute Constitutional violations unless they impair counsel's performance in a manner that undermines the proceeding's fairness or reliability.  Jones, 852 F.2d at 1276 (citing Strickland, 466 U.S. at 688).  Here, the record reflects that Mr. Gorence tries the case, presents a coherent defense theory, cross-examines witnesses, and argues the mens rea issue to the jury.  Janzad does not show that any aspect of that performance was diminished because of the alleged fee dispute.

To the extent that Janzad believes Mr. Gorence's collection tactics are improper, such concerns may implicate professional-conduct rules.  The question before the Court is not whether counsel's tone or billing methods are ideal; it is whether his conduct renders the trial constitutionally unreliable.  On this record, Mr. Gorence's demand does not affect his performance. Accordingly, Mr. Gorence's collection tactics fall within the "wide range of reasonable professional assistance."  Jones, 852 F.2d at 1277.

For the same reasons, Janzad cannot establish prejudice.   This standard requires the defendant to show that "counsel's errors were so serious as to deprive him of a fair trial; a trial whose result is reliable."  Jones, 852 F.2d at 1277.  She identifies no specific way in which the alleged demand for additional fees affects the trial's outcome.  She does not point to any evidence that Mr. Gorence does not introduce, any witness whom Mr. Gorence does not call, or any argument that Mr. Gorence does not make because of the fee dispute.  Without a concrete showing that the alleged conduct alters the adversarial process or affects the verdict, the Court cannot

conclude that Mr. Gorence deprives Janzad of a fair trial.  Accordingly, the Court concludes that Mr. Gorence's alleged fee-related threats do not constitute ineffective assistance of counsel, and the Court denies the MNT on this ground.

## VII.   THAT MR. GORENCE ALLEGEDLY ALLOWS THE UNITED STATES TO INTRODUCE EVIDENCE INVOLVING FORMER VILA BOARD MEMBER, RICHARD PADILLA, DOES NOT WARRANT A NEW TRIAL.

Janzad next argues that the Court should grant a new trial, because Mr. Gorence permits the United States to introduce evidence relating to her prior involvement with former VILA board member Richard Padilla.  See MNT at 21.  Janzad contends that the Court should exclude evidence relating to Padilla under rule 404(b).  See MNT at 21.  Janzad also argues that Mr. Gorence fails to object to Exhibit 96 and Exhibit 97 -- the deed of trust and warranty deed relating to the property on which Padilla holds a mortgage.  See MNT at 21.  According to Janzad, the United States introduces these exhibits to establish a pattern of her "abusing influence" and "fiduciary responsibility."  MNT at 21.  Finally, Janzad asserts that the United States mischaracterizes her transaction with Padilla and that Mr. Gorence cannot correct the alleged mischaracterization, because of his failure to investigate and because of his lack of preparation.  See MNT at 21.

The United States responds that the Court rules that information about the transaction between Janzad and Padilla is intrinsic and res gestae evidence, because the value of the second mortgage is contingent on the status of the first mortgage that Padilla holds.  See Response at 17. The United States agrees with the Court's ruling, arguing that the fact that Janzad creates a second mortgage on the property while withholding facts about the first mortgage that Padilla holds demonstrates consciousness of guilt and bad faith.  See Response at 17.  The United States further argues that Janzad makes several damaging admissions during her cross-examination and acknowledges facts that she now characterizes as the United States' misstatements.  See Response at 17.  The Court agrees with the United States that Mr. Gorence's conduct regarding the

introduction of evidence relating to Padilla does not warrant a new trial.

A court tasked with deciding an ineffective assistance of counsel claim must determine whether the counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Jones, 852 F.2d at 1276 (citing Strickland, 466 U.S. at 688). The proper standard for assessing attorney performance is that of reasonably effective assistance under prevailing norms. See Jones, 852 F.2d at 1276. The Strickland Supreme Court cautions, however, that "judicial scrutiny of counsel's performance must be highly deferential, and that every effort be made to eliminate the distorting effects of hindsight." Jones, 852 F.2d at 1277 (citing Strickland, 466 U.S. at 689). First, a defendant must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Jones, 852 F.2d at 1277. Second, the defendant "must show that counsel's performance prejudiced the defense." Jones, 852 F.2d at 1277. This standard requires the defendant to show that "counsel's errors were so serious as to deprive him of a fair trial; a trial whose result is reliable." Jones, 852 F.2d at 127.

The Court first must determine whether Mr. Gorence's conduct surrounding the United States' cross-examination of Janzad about the first mortgage involving Padilla is reasonable. See Jones, 852 F.2d at 1277. Despite Janzad's assertion that Mr. Gorence allows the United States to introduce evidence relating to Padilla, the record reflects that Mr. Gorence repeatedly opposes the admission of evidence concerning the property, mortgage, and related lawsuit between Janzad and Padilla on the ground that it constitutes prohibited rule 404(b) evidence. Far from acquiescing in the introduction of the evidence, Mr. Gorence actively and consistently sought its exclusion.

During cross-examination, the United States questions Janzad about the first mortgage for the 1709 Georgia property. See August 2, 2024, Tr. at 1236:9-21 (Peña). This mortgage originally is between Wells Fargo and Padilla. See August 2, 2024, Tr. at 1236:19-24 (Pena, Janzad). Janzad

is Padilla's power of attorney and conducts a cash-out refinance of the property, using the loan proceeds for her business. See August 2, 2024, Tr. at 1271:3-7 (Peña, Janzad). While cross-examining Janzad about the first mortgage, the United States seeks to introduce Exhibit 96, the deed of trust for the 1709 Georgia property. See August 2, 2024, Tr. at 1267:18-19 (Peña). When the United States moves to admit Exhibit 96, Mr. Gorence conducts a voir dire of Janzad to determine her familiarity with the document. See August 2, 2024, Tr. at 1267:20-21 (Court, Gorence). Following this voir dire, Mr. Gorence objects to Exhibit 96, stating that Janzad "doesn't have a basis of familiarity" with the document. August 2, 2024, Tr. at 1269:21-25 (Gorence). The Court then allows the United States further to lay a foundation to establish her connection to the deed. See August 2, 2024, Tr. at 1270:8-10 (Court). After the United States attempts to establish that foundation, Mr. Gorence again objects and requests to approach, arguing that evidence concerning the first mortgage does not relate to T.H. and constitutes impermissible rule 404(b) evidence. See August 2, 2024, Tr. at 1272:1-15 (Gorence).

The record reflects that, during the ensuing sidebar, Mr. Gorence repeatedly argues that the Padilla evidence constitutes rule 404(b) evidence:

> Gorence:    I would just like to know what this is being offered for, because it sounds like this is quintessential 404(b) that's never been noticed, and haven't had a chance to object to it. We could have had pretrial litigation over it. I've never seen this, never put in the discovery.
>
> Court:    Is the purpose of this, 404(b)?
>
> Pena:    No, sir. This is intrinsic. Because my next document is going to be the transfer of 1709 Georgia, which is the property that we're talking about in this case. The next document is going to be the transfer from Padilla to VILA, to connect it up, so the jury can understand why she was doing this in relation to this particular property, 1709.
>
> Gorence:    But, Your Honor, that's 404(b), another act. They're going to say this is a pattern.

August 2, 2024, Tr. at 1272:16-1273:9 (Gorence, Court, Pena).

Gorence:    If it's limited to the mortgage -- I just don't want any argument that this Garcia [] transaction was improper at all.  We've already heard that a veteran can give money.  We've heard it from three of their witnesses; that as long as the veteran is competent, they can do whatever they want with it. Started with Mr. Quijano, even Mr. Gonzales.  I understand the language.  This will -- why it's a jury question, why I didn't raise a Rule 29-- testimony is very adverse -- says she can do exactly that from VA personnel.  I don't have a problem with this as long as they could -- you did this; another veteran did exactly what Hubshman did.  If they're saying it's improper, I totally object. 404(b), one of the purposes would be to show intent.  That's one thing you can do.  They're saying it is an improper transaction.

August 2, 2024, Tr. at 1275:14-1276:5 (Gorence).

Gorence:    I'm still objecting. That's 404(b).

Court:    What he just said is not prejudicial to her.  He may use it in closing.

Gorence:    He just said she used the power of attorney inappropriately.  He's saying that that power of attorney was used, a second mortgage.  She sucked money out without his knowledge.

Court:    If you don't want him to ask leading questions, I'm going to let him ask those questions to elicit that testimony.  And no telling what she's going to say.

Gorence:    Well, okay.  But all I'm getting at, that's 404(b), Your Honor.

August 2, 2024, Tr.1280:9-22 (Gorence, Court).

In sum, the record contradicts Janzad's contention that Mr. Gorence stands idly by while the United States introduces the Padilla evidence.  Janzad offers only conclusory assertions, which fall short of overcoming the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 669.  The transcript instead reflects a vigorous adversarial process in which Mr. Gorence repeatedly objects to the introduction of the Padilla evidence and advances multiple rule 404(b) arguments during sidebar discussions with the Court.  Mr. Gorence also objects specifically to the admission of Exhibit 96, arguing that the Court should exclude the deed of trust and related questioning under rule 404(b).  Once the Court overrules that objection after the United States lays additional foundation, it is not unreasonable

for Mr. Gorence to decline to lodge a redundant objection to Exhibit 97 -- the warranty deed for the same property -- particularly where the Court already rules on the admissibility of the underlying subject matter.

In addition to Mr. Gorence's conduct being reasonable, Janzad is also unable to show that Mr. Gorence's conduct prejudices her. See Jones, 852 F.2d at 1277. Counsel's error, even if unreasonable, "does not warrant setting aside the judgment of a criminal trial if the error has no effect on the judgment." Jones, 852 F.2d at 1277. The Court ruled during trial that the Padilla evidence is intrinsic to the transactions that places the Georgia property in Janzad's control. See August 2, 2024, Tr. at 1273:13-17 (Court). Because the Court admits the evidence on that basis -- not under rule 404(b) -- its admission is neither improper nor unfairly prejudicial.

Additionally, Janzad does not meet her burden of showing that exclusion of this evidence alters the jury's verdict. See Strickland, 466 U.S. at 694. During the trial, the Court observes that Janzad describes the lawsuit between her and Padilla to the jury, thereby introducing the details that she now characterizes as prejudicial. See August 2, 2024, Tr. at 1292:21-1293:5 (Court, Pena). Moreover, as the Court previously notes, Janzad frequently declines to answer questions directly or provide expansive responses to questions that called for simple yes-or-no answers. These responses -- which often introduce additional information beyond the scope of the United States' questions -- are the product of her own testimony and not counsel's performance.

For these reasons, Janzad does not satisfy either Strickland prong. The record demonstrates that Mr. Gorence actively opposes the admission of the Padilla evidence and advances multiple rule 404(b) objections during trial. Even if Mr. Gorence objects differently or more frequently, the Court's ruling admitting the evidence as intrinsic does not change. Nor does Janzad show a reasonable probability that the jury's verdict is different, absent the challenged evidence.

Accordingly, the Court denies the MNT to the extent it relies on the allegation that Mr. Gorence allows the admission of improper evidence regarding Padilla.

**IT IS ORDERED** that the Defendant's Opposed Motion for a New Trial, filed May 1, 2025 (Doc. 126), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Todd Blanche
  Deputy Attorney General
Ryan Ellison
  First Assistant United States Attorney
Frederick T. Mendenhall, III
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

 *Attorneys for the Plaintiff*

Jon K. Stanford
The Law Office of Jon Stanford
Albuquerque, New Mexico

--and--

Joel R. Meyers
Santa Fe, New Mexico

-- and --

Shaheen P. Torgoley
Ryan Rapp Pacheco & Kelley, PLC
Phoenix, Arizona

-- and --
Brian Pori
Albuquerque, New Mexico

 *Attorneys for the Defendant*